# UNITED STATES DISTRICT COURT FOR THE
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NANCY RENNIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-0506-CVE-PJC |
| | ) | |
| T & L OIL INCORPORATED, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is the Motion of Plaintiff to Reconsider, Vacate, Set Aside, Alter and

Amend Opinion and Order and Judgment of Dismissal (Dkt. ## 112, 113).  Plaintiff Nancy Rennie

("Rennie") seeks to set aside the Court's May 20, 2008 Opinion and Order (Dkt. # 110) and

Judgment of Dismissal (Dkt. # 111) for the reason that they are "manifestly contrary to law" under

Fed. R. Civ. P. 59(e).  Dkt. # 112, at 2.  In the alternative, plaintiff seeks to alter or amend the

Opinion and Order (Dkt. # 110) "to recognize tolling of the 90-day appeal time contained in Section

2 of the Osage Indian Act of March 2, 1929 . . . ."  Id. at 2.  For the reasons set forth below, the

Court finds that plaintiff's motion should be **granted.**

## I.

Only a brief review of the procedural history is necessary on reconsideration.  Rennie filed

the instant civil action in this Court on September 22, 2006, claiming that T&L Oil, Inc. ("T&L

Oil"), the lessee of the mineral estate underlying her surface estate, unreasonably used and

intentionally damaged her land and property.  See Dkt. # 2.  Rennie joined the Bureau of Indian

Affairs ("BIA") and United States Department of Interior, United States of America (collectively

"United States") as necessary defendants.  Id. at 2.  The Court subsequently directed the parties to submit to mandatory arbitration pursuant to the Act of March 2, 1929, ch. 493, § 2, 45 Stat. 1478 ("Osage Allotment Act" or "Act") and 25 C.F.R § 226 ("BIA regulations").  See Dkt. # 21.  In May 2007, the Court reopened the case after the parties had completed the mandatory arbitration.  See Dkt. # 25.  Rennie asserted five causes of action, arising under both state and federal law, in her amended complaint.  See Dkt. # 27.  The amended complaint stated that subject matter jurisdiction was premised on federal question jurisdiction under 28 U.S.C. § 1331.  Id. at 1.

In December 2007, the Court dismissed the United States and plaintiff's federal claim arising under the Comprehensive Environmental Resources, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675.  See Dkt. # 62.  Because the remaining parties were not diverse, and because ostensibly no federal claims remained, T&L Oil subsequently moved to dismiss for lack of subject matter jurisdiction.

Rennie argued that this Court had subject matter jurisdiction over her claims pursuant to 28 U.S.C. § 1331.[1]  Dkt. # 98, at 1.  She claimed that a federal question existed because the oil and gas lease is governed by the Osage Allotment Act and BIA regulations.  Id. at 3; Dkt. # 27, at 1.  As required by section 2 of the Act, the parties arbitrated their dispute and obtained an arbitration decision on February 26, 2007.  Dkt. # 27, at 1.  According to Rennie, the Act – itself – entitled her to bring this action in federal court.[2]  Dkt. # 98, at 3.  Rennie further submitted that her "claims for

---

[1]     Rennie admitted that this Court did not have diversity jurisdiction under 28 U.S.C. § 1332. Dkt. # 98, at 4; see Dkt. # 27, at 2.

[2]     Rennie did not at that time raise or cite this Court's decision in Quarles v. United States ex rel. Bureau of Indian Affairs, No. 00-CV-0913-CVE-PJC, 2006 WL 2645131 (N.D. Okla. Sept. 12, 2006).

damages arising out of a continuing nuisance and punitive damages [we]re based upon state law and properly within the Court's supplemental jurisdiction under the provisions of 28 U.S.C. § 1367 . . . ." Id. at 2.

By contrast, T&L Oil argued that the plain language of the Act allowed plaintiff to bring her claims in federal court only if "the case could be properly instituted in federal court OR properly removed to federal court." Dkt. # 101, at 4 (emphasis in original).  T&L Oil contended that Rennie's "[m]ere reliance on a federal statute [did] not confer jurisdiction on the federal courts." Id. at 6.  According to T&L Oil, "the proper showing [wa]s not that plaintiff [wa]s relying on a federal statute" but that plaintiff's "case involve[d] the construction of a federal statute." Id. (emphasis in original).  T&L Oil further contended that, because no federal question existed, "there [wa]s no supplemental jurisdiction to support" Rennie's common law claims. Id. at 7.

The Court agreed with T&L Oil.  See Dkt. # 110.  The Court began by noting that neither party cited any case law addressing the issue of whether the Act itself confers federal question jurisdiction pursuant to 28 U.S.C. § 1331. Id. at 3.  The Court found that although the Court may have had, at one time, federal question jurisdiction, this was no longer the case. Id. at 7.  Plaintiff's CERCLA claim had been dismissed, and the United States was no longer a party. Id.  The Court held that a federal court "does not have federal question jurisdiction simply because the Act and BIA regulations provide a procedural mechanism for resolving disputes between surface land owners and

oil operators." <u>Id.</u> at 5.  Under the plain statutory language,[3] the Act does not confer subject matter

jurisdiction.  <u>Id.</u>  Moreover, Rennie's state law claims did not arise under federal law.  <u>Id.</u> at 6-7.

"The Act and corresponding BIA regulations merely provide[d] the mandatory administrative

procedure for addressing Rennie's claims."  <u>Id.</u> at 7.   Accordingly, after declining to exercise

supplemental jurisdiction over Rennie's remaining state law claims, <u>see</u> <u>id.</u> at 7-8, the Court entered

a judgment dismissing the case, Dkt. # 111.

Within ten days of the judgment, Rennie filed a motion to alter or amend the judgment

pursuant to Fed. R. Civ. P. 59(e).  Rennie claims that the Court's Opinion and Order is manifestly

contrary to law.  Dkt. # 112, at 2.  According to Rennie, this Court and the Tenth Circuit Court of

Appeals repeatedly have held that "an action for damages . . . following [mandatory] arbitration is

a substantive claim under the federal law for damages to land resulting from oil and gas operation

---

[3]      Section 2 of the Act reads, in pertinent part:

>        All claims for damages arising under this section shall be settled by
> arbitration under rules and regulations to be prescribed by the
> Secretary of the Interior; but either party shall have the right to
> appeal to the courts without consent of the Secretary of the Interior
> in the event he is dissatisfied with the award to or against him.  The
> appeal herein authorized shall consist of filing an original action <u>in
> any court of competent jurisdiction sitting at the county seat of Osage
> County</u>, to enlarge, modify or set aside the award, and in any such
> action, upon demand of either party, the issues, both of law and of
> fact shall be tried de novo before a jury upon the request of either
> party. Arbitration, or a bona fide offer in writing to arbitrate, shall
> constitute conditions precedent to the right to sue for such damages
> . . . <u>nothing herein contained shall preclude the institution of any such
> suit in a Federal court having jurisdiction thereof, or the removal to
> said court of any such suit brought in the State court, which under
> Federal law may be removed to the Federal court</u> . . . .

45 Stat. at 1479-80 (emphasis added).

in the Osage Nation and [is] sufficient to invoke subject matter jurisdiction." Id. at 5. Rennie

discusses three decisions in support of her contention. See id. at 5-7.

First, Rennie cites an earlier decision in this case. The only issue before the Court at that

time was whether Rennie could bring her suit prior to any arbitration proceeding. Dkt. # 21, at 6.

The parties did not contest that the Act and BIA regulations applied, for Rennie's land is located in

Osage County and her claims arose under the Act.[4] Id. at 4, 6; Dkt. # 27, at 1. The Court found that

plaintiff could not bring suit prior to exhausting her administrative remedies. Dkt. # 21, at 8.

Because the language of section 2 of the Act clearly stated that plaintiffs could resort to litigation

only after participation in arbitration, the Court directed the parties to submit to the arbitration

procedures set forth in the BIA regulations. Id. at 8-9.

Second, Rennie cites this Court's decision in Quarles, 2006 WL 2645131, at *1-2.[5] The

issue there (on reconsideration) was whether Oklahoma's saving provision could be used to extend

the filing time for a claim under section 2 of the Osage Allotment Act. See id. Plaintiffs argued that

their claim was a "state law claim for damage to land, and the saving provision c[ould] be used to

extend the time for filing a claim under [s]ection 2." Id. at *1. The Court disagreed, finding that

a claim for damages to land arising under the Act and BIA regulations is a claim "expressly based

---

[4]     In a previous decision on remand (from the Tenth Circuit) in a different case, this Court
interpreted "the Quarles decision of the Tenth Circuit to mean that, regardless of the
underlying factual allegations, a plaintiff must specifically reference and base its claim for
relief on section 2 of the Act for any claim to 'arise under' thereunder and, hence, for the
arbitration provision to apply." Quarles v. United States ex rel. Bureau of Indian Affairs,
No. 00-CV-0913-CVE-PJC, 2006 WL 2054074, at *3 (N.D. Okla. July 24, 2006).

[5]     Rennie's counsel was directly involved in Quarles and took the same position in that case
as he does here. In Quarles, he argued that the Osage Allotment Act created a substantive
right to relief under federal law. See No. 00-CV-0913-CVE-PJC, Dkt. # 240.

on federal law." Id. at *2. The Court opined that because the BIA regulations created the mandatory administrative process for resolving plaintiffs' claims, and because the regulations did not reference state law as a basis for relief, the regulations created a substantive right to relief under federal law. Id. The BIA regulations did not merely provide the procedure for adjudicating such claims but instead provided injured landowners in Osage County with a cause of action for redress. Id. The Court concluded, therefore, that Oklahoma's saving provision was not applicable to this federal land damages claim with its own statute of limitations period. Id.

Third, Rennie notes that the Quarles plaintiffs went to trial on "land damage claims" against non-diverse, private defendants before another judge of this Court. Dkt. # 112, at 7; see Quarles v. Little River Energy Co., No. 00-CV-0913-GKF-PJC, Dkt. # 510, at 1. The "land damage claims" arose under state law. See Little River Energy Co., Dkt. # 510, at 2. From the record, it does not appear that these remaining defendants challenged the court's supplemental jurisdiction. See Little River Energy Co., Dkt. ## 323, 324, 428.

Rennie asserts two additional arguments as to why the Court's decision is manifestly contrary to law. Rennie argues for the first time on reconsideration that "any action involving an Osage County landowner's right of recovery for oil and gas operation under the Act[] requires resolution of a federal question and supports subject matter jurisdiction of the Court." Dkt. # 112, at 8. Rennie also reasserts her arguments pertaining to supplemental jurisdiction. See id.

Rennie concludes that the Act "creates substantive rights under federal law, as well as questions of federal law relating to the measure of damages[,]" and, thus, the Court's decision must be modified. Id. at 9-10. In the alternative, Rennie requests the Court "to alter or amend the Opinion and Order . . . to recognize tolling of the 90-day appeal time contained in [s]ection 2 of the

. . . Act . . . ." Id. at 2.  Plaintiff urges the Court to preserve her appeal of the arbitration award "made in good faith and under the instructions of the Court prior to involuntary dismissal." Id. at 10.

**II.**

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.'  Instead the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)."  Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). Plaintiff's motion was filed within ten days of the Opinion and Order, so the Court will treat it as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e).  Allender v. Raytheon Aircraft Co., 439 F.3d 1236, 1242 (10th Cir. 2006).  The Tenth Circuit has stated that "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  Hence, a Rule 59(e) motion "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  Id.  A party may not, however, use a Rule 59(e) motion "to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  Id.

**III.**

At the outset, the Court notes that it will not revisit issues already addressed, entertain arguments that could have been raised before, or examine case law that has no bearing on the Court's decision.  The Court also advises plaintiff that if she relied on this Court's decision entered two years ago in a separate case, she should have – at a minimum – cited the case in her briefing.

7

With that being said, the Court nevertheless finds that the unique circumstances of this case merit amendment of the Opinion and Order (Dkt. # 110) and Judgment of Dismissal (Dkt. # 111).  A manifest injustice would arise if the Court were to decline to exercise supplemental jurisdiction over Rennie's remaining claims after she (i) relied on the Court's prior holding that a federal right to relief exists under the Osage Allotment Act, see Quarles, 2006 2645131, at *2, and (ii) complied in good faith with the Court's instructions to proceed to arbitration.  This conclusion does not mean that the Court is setting aside its holding with respect to federal question jurisdiction, however.  For the reasons set forth in the Court's Opinion and Order (Dkt. # 110), the Osage Allotment Act does not itself confer federal question jurisdiction.

To prevent manifest injustice, the Court elects to exercise supplemental jurisdiction over Rennie's remaining claims.  Supplemental jurisdiction is a discretionary matter.  A federal district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), the United States Supreme Court held that supplemental "jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in consideration of judicial economy, convenience and fairness to litigants."[6] Id. The Court found that if a plaintiff's "federal claims are dismissed before trial," the plaintiff's "state claims should be dismissed as well."  Id.

The Supreme Court made clear in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988), however, that Gibbs did not create an inflexible rule mandating dismissal.  The Court

---

[6]   The text of Gibbs actually refers to "pendent jurisdiction," which is the predecessor of the modern nomenclature, "supplemental jurisdiction."  For simplicity's sake, the Court uses only the latter terminology.

reiterated that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Id. at 350.

The Tenth Circuit applies the Gibbs/Carnegie-Mellon factors, with additional considerations in certain circumstances. In Thatcher Enterprises v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)), the court held that "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." While a federal "district court has discretion to try state claims in the absence of any triable federal claims," this discretion should be exercised only "in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." Id.; see Olcott v. Del. Flood Co., 76 F.3d 1538, 1549-50 (10th Cir. 1996) (applying Third Circuit law but noting the Tenth Circuit rule that a district court "should consider the particular circumstances of the case" in determining supplemental jurisdiction). Similarly, in Jones v. Intermountain Power Project, 794 F.2d 546, 550 (10th Cir. 1986), the court held that a "federal court justifiably may retain jurisdiction of pendent [state law] claims if substantial time and energy have been expended on the case prior to disposition of the federal claims[,]" particularly when the complaint does not present "novel or unsettled questions of law." More recently, the Tenth Circuit has reiterated that, "[i]n general, when federal claims are disposed of prior to trial, the district court may decline to exercise supplemental jurisdiction over state law claims and allow the plaintiff to assert those claims in state court." Summum v. Duchesne City, 482 F.3d 1263, 1276 (10th Cir. 2007) (emphasis added).

The Court finds that the particular circumstances of this case weigh in favor of exercising supplemental jurisdiction.  While the Court acknowledges that the federal claim was dismissed "prior to trial," <u>Summum</u>, 482 F.3d at 1276, the Court also realizes that plaintiff filed her case  in this Court approximately two years ago.  The Court "justifiably" may retain jurisdiction of Rennie's state law claims "if substantial time and energy have been expended on the case prior to disposition of the federal claim[]." <u>Jones</u>, 794 F.2d at 550.  This case also does not involve novel questions of state law. <u>See</u> <u>id.</u>  Moreover, and most significantly, the Court cannot ignore the fact that plaintiff cannot refile her appeal of the arbitration award in state court given that the statutory period for filing has long since passed.  It would be greatly unfair if this Court did not retain jurisdiction over Rennie's remaining claims when she relied in good faith on a prior holding, which this Court has subsequently rejected.  The Court concludes, therefore, that the unique circumstances of this case merit the exercise of supplemental jurisdiction.

**IT IS THEREFORE ORDERED** that the Motion of Plaintiff to Reconsider, Vacate, Set Aside, Alter and Amend Opinion and Order and Judgment of Dismissal (Dkt. ## 112, 113) is **granted**.  The Court's Opinion and Order (Dkt. # 110) is **amended** as set forth above.

**IT IS FURTHER ORDERED** that the Judgment of Dismissal (Dkt. # 111) is hereby **vacated**.  This matter is therefore **reopened.**

**IT IS FURTHER ORDERED** that the parties shall submit a jointly proposed scheduling order no later than **July 31, 2008.**

**DATED** this 24th day of July, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT